The Honorable George Hopkins State Senator 78 Harver Hills Malvern, AR 72104
Dear Senator Hopkins:
You have requested an Attorney General opinion concerning Act 865 of 1999.
Background Information
Act 865 of 1999 allows "rehabilitative services corporation[s]" and "local units of government" to join the Arkansas Public Employees' Retirement System (APERS) as "participating public employers." Acts 1999, No. 865, § 1. The Act also grants the Board of Trustees of APERS the authority to promulgate such rules and regulations as are necessary to provide for the participation of "rehabilitative services corporations" and "local units of government." Acts 1999, No 865, § 2.
Accordingly, the APERS Board adopted proposed Regulation 309, which provides that employees of rehabilitative services corporations and local units of government may purchase service rendered to the employer prior to the date of participation in APERS. Act 865 itself does not specifically provide for these employees to purchase credited service, as have other acts for certain employees.
Question Presented
In light of the foregoing facts, you have asked:
 Does the APERS Board have the authority (under Act 865 of 1999 or other sources of law) to promulgate a regulation allowing employees of rehabilitative services corporations or local units of government to purchase credited service?
Response
It is my opinion that the APERS Board does have the authority to promulgate a regulation allowing employees of rehabilitative services corporations[1] or local units of government to purchase credited service.
I base this conclusion on various sources of law. First, Act 865 of 1999 contains the following broad grant to the APERS Board of rulemaking authority concerning the newly-admitted public employers:
 The Board of Trustees shall have the authority to promulgate such rules and regulations as are necessary to provide for the participation of employers defined as Rehabilitative Services Corporations, under the provisions of an act of the 1999 regular session of the General Assembly, and such local units of government as are provided for under the Arkansas Code.
Acts 1999, No. 865, § 2.
This language alone is sufficient, in my opinion, to give the APERS Board the authority to promulgate rules and regulations allowing employees of rehabilitative services corporations to purchase credited service. This authority is bolstered by the fact that the APERS Board is given broad rule-making authority concerning credited services for all members. This grant of authority is set forth in A.C.A. § 24-4-507, which states:
 The board shall determine, by appropriate rules and regulations consistent with the provisions of this act, the amount of service to be credited any member for any fiscal year.
A.C.A. § 24-4-507(a)(1).
Finally, the statute outlining the Board's general powers and duties is stated broadly enough to encompass the Board's power to make rules and regulations addressing the purchase of credited service.
That statute states:
 (b) In addition to such other duties as are imposed upon the board by this act, the board shall:
 (1) Make all rules and regulations as it shall deem necessary from time to time in the transaction of its business and in administering the system;
A.C.A. § 24-4-105(b)(1).
I also find it pertinent that the employees of the newly-admitted rehabilitative services corporations and local units of government already have a statutory right (along with the employees of other participating public employers) to purchase credited service under certain circumstances. See A.C.A. § 24-4-723, -724. These provisions indicate (as do various other statutory sections, see, e.g., A.C.A. § 24-4-501, -052, -504, -742) a legislative recognition of purchased service.[2]
Clearly, the legislature intended to give the APERS Board the authority to promulgate the rules and regulations that the Board deems necessary to administer the system effectively. I also point out that the Arkansas Supreme Court has consistently held that an interpretation given to a statute by the agency charged with its execution is highly persuasive, and while it is not conclusive, neither should it be overturned unless it is clearly wrong. Arkansas State Med. Bd. v. Bolding, 324 Ark. 238,920 S.W.2d 825 (1996); Douglass v. Dynamic Enterprises, Inc., 315 Ark. 575,869 S.W.2d 14 (1994); Junction City Sch. Dist. v. Alphin, 313 Ark. 456,855 S.W.2d 316 (1993); Brimer v. Arkansas Contractors Licensing Bd.,312 Ark. 401, 405, 849 S.W.2d 948 (1993); Pledger v. Boyd, 304 Ark. 91,799 S.W.2d 807 (1990); Arkansas Department of Human Services v. Green AcresNursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988); ArkansasContractors Licensing Bd. v. Butler Const. Co., Inc. of Barling,295 Ark. 223, 748 S.W.2d 129 (1988); Ragland v. Arkansas Writers' Project,Inc., 287 Ark. 155, 697 S.W.2d 94 (1985), reh denied, 287 Ark. 155,698 S.W.2d 802; Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983).
The APERS Board has interpreted Act 865 of 1999 as giving it the authority to promulgate rules and regulations allowing employees of rehabilitative services corporations and local units of government to purchase credited service in the system. In light of the above-discussed broad grants of rulemaking authority and provisions recognizing purchased service, the Board's interpretation of Act 865 cannot be said to be clearly wrong. Accordingly, that interpretation of the Act will be given considerable deference by the courts.
I therefore conclude that the APERS Board does have the authority to promulgate rules and regulations allowing the employees of rehabilitative services corporations and local units of government to purchase credited service.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] Act 880 of 1999 authorized the creation of "rehabilitative services corporations" as "public bodies." Although the public status of these corporations is not entirely clear, I am assuming for purposes of this opinion that they are, in fact, public entities rather than private ones.
[2] I am aware that an argument could be made that if the legislature had intended to allow employees of rehabilitative services corporations and local units of government to purchase credited service, it would have provided for them to do so in Act 865, as it did for the employees specified in the statutes cited above. (I also acknowledge that it was concluded in Attorney General Opinion 97-170 that sheriffs could not purchase credited service in the system in the absence of statutory authority to do so. That opinion, though, did not address the question of the Board's authority to provide for the purchase of credited service.) However, my research and investigation into the background of Act 865 indicate that there is a legislative trend away from enacting retirement provisions for particular employees and toward more general provisions that enable the Board to address the issues of particular employees and particular groups of employees.